CRAIG A. BURNETT, ESQ., ID# 118907
LAW OFFICES OF C. BURNETT
537 FOURTH STREET, SUITE A
SANTA ROSA, CALIFORNIA 95401
Telephone: (707) 523-3328
Fax (707) 523-3082
Email: cburnett@nomoredebt.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 17-10509 DM12 |
| | Chapter 12 |
| PATRICK MERRITT VINATIERI, dba VINATIERI VINEYARDS, | DEBTOR'S SECOND AMENDED CHAPTER 12 PLAN |
| SSN: xxx-xx-5201, | |
| Debtor. | |

Debtor PATRICK MERRITT VINATIERI, dba VINATIERI VINEYARDS ("Debtor") proposes the following second amended Chapter 12 plan pursuant to 11 U.S.C. Section 1222:

I. DEFINITIONS

1.01. "Plan" shall mean this Plan and any modification of the Plan which become effective pursuant to Bankruptcy Code Section 1225.

1.02. "Allowed Claim" shall mean a Claim against the Debtor (a) which a proof of claim has been filed with the Court and as to which no objection is thereafter filed; (b) which has otherwise been allowed by Final Order; or (d) which the Plan otherwise explicitly allows.

1.03. "Administrative Claim" or "Expense of Administration" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Code including, without limitation, compensation for legal and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 23, United States Code.

1.04. "Estate" means all of the Debtor's now or existing legal or equitable interests in any tangible

or intangible property, whether real or personal.

1.05. "Lien" means any charge against or interest in property of the Estate to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Bankruptcy Code.

1.06. "Court" means United States Bankruptcy Court, Santa Rosa Division.

1.07. "Effective Date of the Plan" means the date the Order Confirming Chapter 12 Plan is entered by the Court.

1.08. "Real Property" means the real property located at 6085 Solano Avenue, Napa, California (APN 034-160-018).

1.09. Any term used in this Plan that is not defined here but that is used in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.

## II. CLASSIFICATION OF CLAIMS AND INTERESTS

The Claims against and Interests in the Debtor are classified as set forth below. Administrative Expenses and Fees allowed under the Bankruptcy Code section 507(a)(1) and unsecured priority claims of Governmental Units under Bankruptcy Code section 507(a)(8) are to be paid as more specifically set forth below and are not separately classified herein.

### A. IDENTITY AND PROPOSED TREATMENT OF § 507(a)(8) CLAIMANTS

2.00. **Unclassified Priority Tax Claims**. There are three possible claimants in this unclassified class: The Internal Revenue Service ("IRS"); and the State of California, Franchise Tax Board ("FTB"); and the State of California, Employment Development Department ("EDD"). The IRS filed an amended priority claim, No. 1, on April 10, 2018, for $0.00, and a general unsecured claim for $6,639.65. Neither the FTB nor the EDD have filed claims in this case and the debtor believes that he has no liability to either taxing authority. All Unclassified Priority Tax Claims are to be paid as follows:

a. Of the payments made by the Debtor to the Trustee, and after completion of the payments to Debtors' counsel pursuant to paragraph 4.02 of the confirmed plan, the Trustee shall pay unclassified priority tax claims the full amount of their allowed claims, with zero percent (0%) interest in 12 equal monthly installments until said claims are paid in full. If the priority tax claims remain unpaid on the sixth

anniversary from their dates of assessment, in addition, the Trustee will pay the balance then due on that date. Priority tax claims, if any, shall accrue no interest, and shall be paid in full within approximately forty six (46) months from the Effective Date, or not later than six years of the dates of assessment, whichever occurs first.

## B. IDENTITY OF CLASSIFIED CLAIMANTS

2.01. Class 1: The Allowed Secured Claim of WELLS FARGO BANK (formerly WACHOVIA MORTGAGE) secured by a First Deed of Trust on Debtor's real property in the amount of $2,133,234.54, including pre-petition arrears in the approximate amount of $780,564.91.

2.02. Class 2: The Allowed Secured Claim of HOLM FAMILY TRUST secured by a Second Deed of Trust on Debtor's real property. HOLM FAMILY TRUST has filed a secured claim in the amount of $476,590.88. A final determination of the amount this claim remains to be ascertained.

2.03. Class 3: The Allowed Secured Claim of RACHEL VINATIERI secured by a Third Deed of Trust on Debtor's real property in the approximate amount of $330,000.

2.04. Class 4: General unsecured claims, including the general unsecured claim of Rachel Vinatieri, in the approximate total estimated amount of $300,000.

## III. IMPAIRMENT OF CLAIMS

All claims are impaired.

## IV. PLAN PAYMENTS AND MEANS FOR EXECUTION OF THE PLAN

4.01. <u>Payments and Vesting</u>. The Debtor has listed his real property for sale, with a current listing price of $4,993,333. Once an offer is accepted and the sale is consummated, all claims of all creditors shall be paid in full from the sales proceeds. In the meantime, commencing June 20, 2018, and on the 20th day of each month thereafter, the Debtor shall make monthly payments to the trustee on the following schedule:

$15,000 per month for the period June 20, 2018 - May 20, 2019;

$16,500 per month for the period June 20, 2019 - April 20, 2023; and

On May 20, 2023, a final payment in the amount necessary to satisfy all remaining allowed unsecured claims to be paid in this plan in full (est.$7,500).

The total payments to be made under this plan is estimated to be in the approximate amount of $979,500.

The Debtor shall be revested with the assets of the estate on the Effective Date of the Plan subject to the terms of the Plan.

4.02. Unclassified claims (expenses of administration).

**Trustee Fees**. Administrative expenses of the Chapter 12 Trustee allowed pursuant to Section 503(b) of the Code shall be paid from the Plan payments as indicated in paragraph 4.01. The Trustee shall receive a percentage of each payment received as established by the United States Trustee.

**Debtor's Counsel's Fees**. Debtor's Chapter 12 Attorney fees shall be paid from the Plan payments as indicated in paragraph 4.01. Fees and costs requested for allowance are as follows: Total Fees & Costs Requested, $12,000.00; fees and costs received, $6,000; balance of fees and costs due, $6,000; monthly payment of $1,500 per month until paid. Fees and costs allowed shall be paid in the first four months following the Effective Date of the Plan. Upon a pre-confirmation dismissal, all accrued pre-confirmation attorney fees and costs payments held by the Trustee shall be disbursed to the attorney.

V. SPECIFIC TREATMENT OF IMPAIRED CLAIMS

5.01. CLASS ONE: WELLS FARGO BANK. WELLS FARGO BANK ("WFB") holds a note dated 1/08/2007 made by Patrick M. Vinatieri in the original principal amount of $1,500,000 that is secured by a first priority deed of trust on the real property commonly described as 6085 Solano Ave, Napa, CA 94558-9787 (the "Property"), document recording number 2007-0001358. With respect to the above mentioned note and deed of trust, WFB filed its secured proof of claim as claim number 2-1 in the amount of $2,133,234.54 as of the date of the petition (the "Claim"). WFB has filed a claim for pre-petition arrearages in amount of $780,564.91. Further, WFB holds a post-petition arrearages claim in the amount of $58,985.98. WFB is impaired.

The parties hereto agree that WFB's Claim shall be modified as follows: WFB shall have a secured claim against the Property in the amount of $2,192,220.52 [which constitutes the Proof of Claim balance and post-petition arrears to be recapitalized] (the "Secured Claim"). The Secured Claim shall be amortized over 480 months at a fixed rate of interest at 6.00% per annum via equal monthly principal and interest

payments in the amount of $12,061.90 each. From the payments made by Debtor into the Plan during the pendency of the Plan, the trustee will commence the foregoing monthly payments to Secured Creditor on July 1, 2018 and shall continue thereafter on the first of each month in accordance with the terms herein for 60 months. After completion of the Plan, the Debtor shall make payments directly to WFB for the remaining 420 months. The maturity date is June 1, 2058 and maturity, including the effect thereof, remains governed by the subject note and security instrument and is otherwise unmodified. The foregoing payments must be received within any grace period as provided by the note and any effect of late payment is governed by the subject note and security instrument.

Property Taxes and Insurance. The Claim shall remain escrowed for payment of property taxes and insurance and the note and/or deed of trust provisions governing the same shall remain in full force and effect. The amount of escrow is subject to change and shall be in addition to the payments described in the preceding paragraph.

Default: WFB may provide Debtor notice of any default related to the Stipulation or otherwise under the subject note or security instrument in accordance with the Note and Deed of Trust, and applicable state law, and/or proceed with all its remedies under the terms of the Note and Deed of Trust, and applicable state and federal law, including but not limited to foreclosure of the subject property, without further notice, order, or proceeding of this Court; the stay of 11 U.S.C. § 362(a) shall be terminated in its entirety as to WFB and the Property upon confirmation of Debtor's plan.

Except as otherwise expressly provided herein, all remaining terms of the subject note and deed of trust shall govern the treatment of WFB's Secured Claim and shall remain unchanged and unmodified.

At the request of WFB, the Debtor shall execute such documents and instruments as are necessary with respect to this stipulation.

The terms of this Stipulation may not be modified, altered, or changed by the Debtor's Chapter 12 Plan, any confirmation order thereon, any subsequently filed Amended Chapter 12 Plan and confirmation order thereon without Secured Creditor's express written consent. The terms of this stipulation shall be incorporated into the Debtor's Chapter 12 Plan and/or any subsequently filed Amended Chapter 12 Plan. In the event of a conflict between a provision of this Stipulation and any provision of Debtor's Chapter 12 Plan or any amendments of modifications thereto, the terms of this Stipulation shall control. To the extent

necessary, the terms of this stipulation shall be automatically incorporated into any plan or amended plan.

This stipulation is contingent upon Debtor obtaining confirmation of a Chapter 12 plan. Should the Debtor fail to obtain confirmation of a Chapter 12 plan and the case be dismissed or closed without confirmation, then the terms of this stipulation shall automatically be rescinded and void ab initio.

In the event the case is dismissed or converted, the terms of the stipulation shall be deemed rescinded and void ab initio.

Should there be a sale, transfer, or refinance of the property, the loan shall be paid in full per the contractual terms at origination unless court approval is obtained.

5.02. <u>CLASS TWO: HOLM FAMILY TRUST.</u> HOLM FAMILY TRUST ("HOLM") is impaired. HOLM shall retain its existing lien on Debtor's Real Property. The maturity date of the secured note shall be modified and extended, such that all accrued interest and principal on the HOLM secured note shall be due in full exactly 240 months from the Effective Date of the Plan. The secured note shall accrue interest at the rate of three percent (3%) per year.

Debtor shall make monthly Plan payments to the Trustee in accordance with Paragraph 4.01 of this Plan. Of the payments made to the Trustee and after completion of payment of Debtor's counsel's fees in accordance with Paragraph 4.02 above , the Trustee shall pay HOLM $1,400 per month, until the one year anniversary of the Effective Date of the Plan. Thereafter, all pre- and post-confirmation defaults on the existing secured note shall be recapitalized by a thorough and complete accounting of all pre-confirmation payments from all sources, accrued interest, late charges, plus any unpaid post-confirmation payments, and any unpaid fees, and allowing claimant a secured claim for this amount with accrued annual interest of three percent (3%). Debtor does not know what this recapitalized claim will be, as it is yet to be determined. However, commencing on the first month after the one year anniversary of the Effective Date of the Plan, of the payments made by Debtor to the Trustee, HOLM shall be paid $2,585 per month, for the remaining 48 months of the plan. After completion of the Plan, the Debtor shall make monthly payments directly to HOLM in such amount as determined by the accounting for the remaining 180 months.

To the extent that the HOLM is not paid in full at the termination of the Plan, the Debtor shall enter into a Change in Terms agreement with HOLM which reflects the new maturity date, payment amount and payment deadlines for the balance of the Class 2 claim identified herein.

Case: 17-10509    Doc# 29    Filed: 05/07/18    Entered: 05/07/18 17:20:33    Page 6 of 8
*DEBTOR'S SECOND AMENDED CHAPTER 12 PLAN, Page 6*

Alternatively, at its election, HOLM may choose to accept a one time payment directly from the Debtor in the amount of $125,000 as full and complete satisfaction of its claim. This election must be made no later than the Effective Date of the Plan.

5.03. The Class 3 claim owing RACHEL VINATIERI ("RACHEL") is impaired. RACHEL shall retain her existing lien on Debtor's Real Property. Upon the Effective Date of the Plan, all pre-confirmation defaults on the existing secured note shall be cured by adding the pre-confirmation accrued interest, late charges and unpaid fees to the principal balance of the note. During the time period of the Plan, interest shall remain payable at the non-default rate provided for in the existing secured note. The maturity date of the secured note shall be modified and extended, such that all accrued interest and principal on RACHEL's secured note shall be due in full exactly 180 months from the Effective Date of the Plan, or upon the sale of Debtor's Real Property, whichever occurs first. The Trustee shall make no payments to RACHEL during the pendency of this Plan, unless the Class 2 Claimant (HOLM), elects to accept the one-time direct payment described above, and if so, the Trustee shall pay RACHEL $1,400 per month after payment of Debtor's Counsel's fees, until the one year anniversary of the Effective Date of the Plan. Thereafter, commencing on the first month after the one year anniversary of the Effective Date of the Plan, of the payments made by Debtor to the Trustee, RACHEL shall be paid $2,585 per month, for the remaining 48 months of the plan.

To the extent that the RACHEL is not paid in full at the termination of the Plan, the Debtor shall enter into a Change in Terms agreement with RACHEL which reflects the new maturity date, payment amount and payment deadlines for the balance of the Class 3 claim identified herein.

5.04. The Class 4 claims owing to general unsecured creditors are impaired. The Class 4 unsecured claims shall be paid 100 cents on the dollar without interest on or before the sixtieth month following the Effective Date of the Plan.

VI. EXPENSES OF ADMINISTRATION

6.01. Trustee fees. Administrative expenses of the Chapter 12 Trustee allowed pursuant to Section 503(b) of the Code shall be paid from the Plan payments as indicated in paragraph 4.02, above. The Trustee shall receive a percentage of each payment received as established by the United States Trustee.

6.02. Debtor's Counsel Fees. Debtor's counsel, Craig A. Burnett, shall have an Allowed

Administrative Claim for total fees and costs of $12,000 of which sum $6,000 has been previously paid. These fees shall be paid as indicated in paragraph 4.02, above.

## VII. TREATMENT OF EXECUTORY CONTRACTS

Debtor assumes all existing grape purchase contracts with all parties, if any. Debtor does not reject any lease or executory contract.

## VIII. ALTERATION OF RIGHTS OF THIRD PARTIES

Except as expressly stated in the Plan, nothing contained in the Plan or any action taken hereunder alters the rights of holders or claims or interests under section 510(a) or 524(a) of the Bankruptcy Code, and holders of secured claims shall retain their liens on Debtor's assets to the extent of the allowed amount of such secured claim.

## IX. NOTICES

All notices required or permitted to be made in accordance with the Plan or by the Code shall be in writing and shall be delivered personally or by First Class Mail to:

| | |
|---|---|
| A. Debtor: | PATRICK VINATIERI<br>6085 Solano Avenue<br>Napa, CA 94558 |
| Attorney for Debtor: | CRAIG A. BURNETT<br>537 Fourth Street, Suite A<br>Santa Rosa, CA 95401 |
| B. Trustee: | DAVID BURCHARD, TRUSTEE<br>P.O. Box 8059<br>Foster City, CA 94404 |

Debtor PATRICK MERRITT VINATIERI, dba VINATIERI VINEYARDS hereby requests confirmation of this second amended Chapter 12 plan.

Date: 5/07/18                               */s/ Craig A. Burnett*
                                            Craig A. Burnett,
                                            Attorney for Debtor